1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   Blue Diamond Renewables,     )   CV 13-04611 RSWL (JCGx)
     LLC,                          )
13                                 )   **ORDER RE: DEFENDANT GE**
                                   )   **ENERGY FIN. SERVS.**
14                   Plaintiff,    )   **MOTION TO DISMISS**
                                   )   **PLAINTIFF'S COMPLAINT**
15        v.                       )   [8]
                                   )
16                                 )
                                   )
17   GE Energy Fin. Servs.;        )
     Southern California Edison    )
18   Co., Magic Johnson Enters.    )
     Inc., and Does 1 to 10.       )
19                                 )
                                   )
20                   Defendants.   )
                                   )
21   _____)

22        Currently before the Court is a Motion to Dismiss

23   Plaintiff Blue Diamond Renewables, LLC's ("Plaintiff")

24   Complaint filed by Defendant GE Energy Financial

25   Services ("Defendant") [8].  The Court, having reviewed

26   all papers submitted pertaining to this Motion, **NOW**

27   **FINDS AND RULES AS FOLLOWS:** The Court **GRANTS in part**

28   and **DENIES in part** Defendant's Motion.

                                  1

# I. BACKGROUND

Plaintiff is a minority-owned Texas company engaged in the development of renewable energy generation and transmission projects. Compl. ¶ 7. Defendant is a New York corporation in the business of development and financing of energy projects. Id. at ¶ 8. In the spring of 2011, Plaintiff submitted a response to Southern California Edison Company's ("SCE") request for a proposal for renewable power sources. Id. at ¶ 20. Although SCE did not accept Plaintiff's proposal, SCE invited Plaintiff to participate in bilateral negotiations for a Power Purchase Agreement ("PPA"). Id. At some point in 2011 and 2012, Plaintiff worked with Defendant on the development of renewable energy projects in the Western United States, including projects for delivery of electricity to SCE. Id. at ¶ 19. During January 2012, Plaintiff, with Defendant's support, began negotiating with SCE regarding a renewable energy proposal. Id. at ¶ 23. Throughout the first half of 2012, Plaintiff expended money on travel and project development to develop and negotiate a renewable PPA with SCE, with funding through investors from both Plaintiff and Defendant. Id. at ¶ 24.

On April 24, 2012, Defendant provided Plaintiff with a "step-by-step set of charts showing the progression of the renewable energy transaction from then through the commercial operation, and included

2

covenants that Plaintiff maintain 100% ownership by minority-owned-business-qualifying individuals, as part of the process of entering into a Letter of Intent for the project." _Id._ at ¶ 25.  The project would be a renewable energy project called the "Blue Diamond Solar Facility" ("Project").  On April 12, 2012, Defendant requested that Plaintiff sign a non-disclosure agreement before preparing a letter of intent, which both Parties signed.  _Id._ at ¶ 27-28.  On April 23, 2012, the Parties executed a letter of intent (the "LOI") relating to a renewable energy project with SCE. _Id._ at ¶ 29.  The LOI called for the creation of a jointly-owned company ("ProjectCo") to develop, own, and operate the Project.  _Id._ at ¶ 30.  ProjectCo would be jointly owned by Plaintiff (51%) and Defendant (49%) with Plaintiff maintaining majority-ownership and managing-member status in order to maintain ProjectCo's status as a minority-owned business.  _Id._  The LOI also indicated that the LOI would be governed by and construed in accordance with the laws of the State of New York.

The LOI contemplated that ProjectCo would enter into a PPA with SCE for a term of 20 years or longer. _Id._ at ¶ 31.  Pursuant to the LOI, Plaintiff (1) agreed to negotiate exclusively with Defendant and keep confidential the business plans and terms of the LOI, (2) agreed to terminate any pending discussions regarding any alternative proposal regarding the

Project, and (3) agreed to a unilateral 180-day
exclusivity period, during which Plaintiff would
terminate any pending discussions or negotiations
regarding any alternative proposals for the SCE
renewable energy project. Id. at ¶ 33-35.

At some point after the LOI was signed, Defendant
and SCE allegedly told Plaintiff that it was fulfilling
the terms of the LOI in a manner which Defendant and
SCE considered satisfactory. Id. at ¶ 78. Morever,
Defendant and SCE allegedly told Plaintiff that
progress on the development of the Project would remain
secure if Plaintiff continued to negotiate in good
faith with Defendant and SCE. Id. However, contrary
to those initial statements, Defendant and SCE
allegedly later professed to have considered
Plaintiff's ability to perform at that time to be
unsatisfactory. Id. at ¶ 79.

In mid-June 2012, SCE contacted Plaintiff to inform
it that SCE would like to include Magic Johnson
Enterprises, Inc. ("MJE") in the Project. Id. at ¶ 39.
Plaintiff then met with representatives of SCE and MJE
regarding the Project and the PPA. Id. at ¶ 40.
During that meeting, the SCE representative allegedly
stated that he wanted "the deal" completed by the end
of August 2012, and MJE and SCE demanded that Plaintiff
alter its agreement with Defendant to include a change
in ownership of ProjectCo to provide a 10% ownership
stake to MJE. Id. at ¶ 41-42. Plaintiff resisted the

4

attempts to force MJE into the Project and to reduce Plaintiff's ownership interest in ProjectCo. Id. at ¶ 43.  After the meeting, SCE's representative contacted Defendant's representatives and allegedly made statements of fact concerning Plaintiff that were false with the intent of scuttling the ProjectCo deal.  Id. at ¶ 47.  On July 24, 2012, Defendant terminated the LOI, stating that the Project was "taking too long to close."  Id. at ¶ 48.

Plaintiff alleges that Defendant made certain promises and obligations regarding ProjectCo and that Defendant unilaterally and prematurely ended the LOI and the ability of Plaintiff to complete negotiations with SCE for a PPA for the Project.  Id. at ¶ 50. Furthermore, Plaintiff alleges that Defendant's termination of the LOI prior to the expiration of the exclusivity period and timeline set forth therein unfairly interfered with Plaintiff's right to receive the benefits of the contract.  Id. at ¶ 63. Additionally, Plaintiff alleges that Plaintiff acted in justifiable reliance on Defendant's alleged statements that Plaintiff's progress regarding the Project was "satisfactory," even though Defendant later professed to have considered Plaintiff's ability to perform "unsatisfactory."  Id. at ¶ 79.  Accordingly, based on the LOI and the alleged cancellation of the LOI, Plaintiff alleges three claims for relief against Defendant: (1) promissory estoppel, (2) breach of the

1  implied covenant of good faith and fair dealing, and

2  (3) negligent misrepresentation [1].

3                    **II. LEGAL STANDARD**

4       Federal Rule of Civil Procedure 12(b)(6) allows a

5  party to move for dismissal of one or more claims if

6  the pleading fails to state a claim upon which relief

7  can be granted.  Dismissal can be based on a lack of

8  cognizable legal theory or lack of sufficient facts

9  alleged under a cognizable legal theory.  <u>Balistreri v.</u>

10 <u>Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

11 1990).  However, a party is not required to state the

12 legal basis for its claim, only the facts underlying

13 it.  <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214,

14 1223 (9th Cir. 1990), <u>cert. denied</u>, 112 S. Ct. 2306

15 (1992).  In a Rule 12(b)(6) motion to dismiss, a court

16 must presume all factual allegations of the complaint

17 to be true and draw all reasonable inferences in favor

18 of the non-moving party.  <u>Klarfeld v. United States</u>,

19 944 F.2d 583, 585 (9th Cir. 1991).

20      The question presented by a motion to dismiss is

21 not whether the plaintiff will prevail in the action,

22 but whether the plaintiff is entitled to offer evidence

23 in support of its claim.  <u>Bell Atl. Corp. v. Twombly</u>,

24 550 U.S. 544, 583 (2007).  "While a complaint attacked

25 by a Rule 12(b)(6) motion to dismiss does not need

26 detailed factual allegations, a plaintiff's obligation

27 to provide the 'grounds' of his 'entitle[ment] to

28 relief' requires more than labels and conclusions, and

1   a formulaic recitation of a cause of action's elements
2   will not do."  Id. at 555 (internal citation omitted).
3   Although specific facts are not necessary if the
4   complaint gives the defendant fair notice of the claim
5   and the grounds upon which the claim rests, a complaint
6   must nevertheless "contain sufficient factual matter,
7   accepted as true, to state a claim to relief that is
8   plausible on its face." Ashcroft v. Iqbal, 556 U.S.
9   662, 678 (2009) (internal quotation marks omitted).

10      If dismissed, a court must then decide whether to
11  grant leave to amend.  The Ninth Circuit has repeatedly
12  held that a district court should grant leave to amend
13  even if no request to amend the pleadings was made,
14  unless the court determines that the pleading could not
15  possibly be cured by the allegation of other facts.
16  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).
17  The court has discretion to deny leave to amend where
18  deficiencies cannot be cured.  Keniston v. Roberts, 717
19  F.2d 1295, 1300 (9th Cir. 1983).

**III. ANALYSIS**

**A.   Defendant's Request for Judicial Notice**

22      As a preliminary matter, the Court addresses
23  Defendant's request that the Court take judicial notice
24  of the letter of intent ("LOI") dated April 23, 2012
25  between Plaintiff and Defendant.  See Def's Req. For
26  Judicial Notice ("RJN").

27      It is well established that a court ruling on a
28  Rule 12(b)(6) motion to dismiss may not consider any

7

material outside the complaint without converting the
motion to dismiss into a motion for summary judgment.
Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).
However, there are two exceptions to the rule. Id.
First, a court may consider "material which is properly
submitted as part of the complaint." Id. If the
documents are not physically attached to the complaint,
they may be considered if their "authenticity . . . is
not contested" and "the plaintiff's complaint
necessarily relies" on them. Parrino v. FHP, Inc., 146
F.3d 699, 705–06 (9th Cir. 1998) superseded by statute
on other grounds as recognized in Lacey v. Maricopa
Cnty., 693 F.3d 896 (9th Cir. 2012). Second, under
Federal Rule of Evidence 201, a court may take judicial
notice of "matters of public record." Lee, 250 F.3d at
689. Under Rule 201, a trial court must take judicial
notice of facts "if requested by a party and supplied
with the necessary information." Fed. R. Evid. 201(d).
A fact is appropriate for judicial notice only if it is
not subject to reasonable dispute in that it is (1)
generally known within the territorial jurisdiction of
the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy
cannot reasonably be questioned. Fed. R. Evid. 201(b).

  Here, although the LOI was not physically attached
to the Complaint, the Complaint necessarily relies on
said letter. Compl. ¶¶ 29-35, 44-45. Moreover,
Plaintiff explicitly indicates that it does not contest

1  the authenticity of the letter.  Opp'n 4:25-26.

2  Because the authenticity of the LOI is not contested

3  and Plaintiff's Complaint necessarily relies on the

4  LOI, the Court **GRANTS** Defendant's Request for Judicial

5  Notice.

6  **B.**  **Defendant's Motion to Dismiss**

7      1.  Choice-of-law provision

8      First, this Court considers what law to apply to

9  the present Motion.  Ordinarily, California substantive

10  law would apply because this is a diversity action.

11  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

12  However there is a choice-of-law provision contained in

13  the LOI that expressly states that "[t]his letter shall

14  be governed by and construed in accordance with the

15  laws of the State of New York, without regard to

16  principles of conflicts of law."  RJN, Ex. A., p. 4.

17      In determining the enforceability of contractual

18  choice-of-law provisions, California courts apply

19  principles set forth in Restatement § 187(2), which

20  reflects a strong policy favoring enforcement of such

21  provisions.  Nedlloyd Lines B.V. v. Superior Court, 3

22  Cal. 4th 459, 465 (1992).  Specifically, Restatement §

23  187(2) states that the law of the state chosen by the

24  parties governs their contractual rights, unless

25  either:

26      (a) the chosen state has no substantial

27      relationship to the parties or the transaction

28      and there is no other reasonable basis for the

1      parties' choice, or

2      (b) application of the law of the chosen state

3      would be contrary to a fundamental policy of a

4      state which has a materially greater interest

5      than the chosen state in the determination of a

6      particular issue and which, under the rule of §

7      188, would be the state of the applicable law

8      in the absence of an effective choice-of-law by

9      the parties.

10  Id. (quoting Restatement (Second) of Conflict of Laws §

11  187 (1971)).

12      In Nedlloyd, the court recognized that the

13  substantial relationship requirement is met if one of

14  the parties is domiciled in the chosen state.  Id.

15  (citing Rest. § 187, subd. (2)(a) com. f).  Here,

16  because Defendant is incorporated in New York,

17  Defendant is domiciled in New York.  See Cream of Wheat

18  Co. v. Grand Forks County, N.D., 253 U.S. 325, 328

19  (1920).  Accordingly, the first required determination

20  is met.

21      As to the second required determination, Plaintiff

22  does not explain how applying New York law is contrary

23  to a fundamental policy of California.  While there is

24  no bright-line definition of a "fundamental policy," a

25  fundamental policy may be "embodied in a statute which

26  makes one or more kinds of contracts illegal or which

27  is designed to protect a person against the oppressive

28  use of superior bargaining power."  In re DirecTV Early

1  <u>Cancellation Litigation</u>, 738 F. Supp. 2d 1062, 1087
2  (C.D. Cal. 2010) (citing Restatement § 187 cmt. g).
3      Here, applying New York law to Plaintiff's
4  promissory estoppel claim would not violate a
5  fundamental policy of California.  See <u>PAE Government</u>
6  <u>Services, Inc. v. MPRE, Inc.</u>, 514 F.3d 856, 860 (9th
7  Cir. 2007).  In <u>PAE Government Services</u>, a
8  subcontractor asserted a promissory estoppel claim
9  against a contractor.  <u>Id.</u>  Pursuant to a choice-of-law
10  clause, both parties had agreed that Virginia law
11  applied to the "Teaming Agreement" at issue in the
12  case.  <u>Id.</u>  Although Virginia law did not recognize
13  promissory estoppel as a cause of action, the court in
14  <u>PAE Government Services</u> held that there was no reason
15  not to enforce the agreement's choice-of-law clause
16  because enforcing the clause would not violate a
17  fundamental public policy of California.  <u>Id.</u>  Here,
18  the Parties agreed that New York law, which **does**
19  recognize a claim for promissory estoppel, would govern
20  the agreement.  If the court in <u>PAE Government Services</u>
21  held that enforcing the clause under Virginia law
22  (which did not recognize a claim for promissory
23  estoppel), would not violate a fundamental public
24  policy of California, then applying New York law (which
25  does recognize a claim for promissory estoppel) would
26  similarly not violate a fundamental policy of
27  California.  As such, the Court finds that applying New
28  York law would not violate a fundamental policy of

1  California.

2      Moreover, applying New York law to Plaintiff's

3  breach of implied covenant of good faith and fair

4  dealing claim would not violate a fundamental policy of

5  California.  See Nedlloyd, 3 Cal. 4th. at 468 (holding

6  that there was no fundamental policy of California

7  requiring the application of California law based on

8  the implied covenant of good faith and fair dealing

9  because the covenant is not a government regulatory

10  policy designed to restrict freedom of contract, but an

11  implied promise inserted in an agreement to carry out

12  the presumed intentions of contracting parties).  When

13  a court enforces the implied covenant, it is acting to

14  protect "the interest in having promises performed"

15  rather to protect some general duty to society.  Foley

16  v. Interactive Data Corp., 47 Cal. 3d 654, 689-90

17  (1988).  Here, because Plaintiff has identified no

18  fundamental policy of California at issue in its

19  contractual dispute with Defendant, the Court hereby

20  finds that applying New York law to Plaintiff's implied

21  covenant of good faith and fair dealing claim would not

22  violate a fundamental policy of California.  See

23  Nedlloyd, 3 Cal. 4th at 468.

24      Additionally, applying New York law to Plaintiff's

25  negligent misrepresentation claim would not be in

26  conflict with any fundamental policy.  In Cardonet,

27  Inc. v. IBM Corp., the court recognized that the Ninth

28  Circuit concluded that application of New York law to

12

1   fraud claims did not violate California public policy.

2   No. C-06-06637 RMW, 2007 WL 518909 at *4 (N.D. Cal.

3   Feb. 14, 2007) (citing Gen. Signal Corp. v. MCI

4   Telecomm. Corp., 66 F.3d 1500, 1506 (9th Cir. 1995)).

5   The court in Cardonet reasoned that to the extent

6   application of New York law to fraud claims does not

7   conflict with fundamental California policy, neither

8   would the application of New York law to the less

9   culpable negligent conduct applicable to negligent

10  misrepresentation claims.   Id.   Accordingly, applying

11  New York law to Plaintiff's negligent misrepresentation

12  claim would not violate a fundamental policy of

13  California.

14      Because Plaintiff has identified no fundamental

15  policy of California at issue in its dispute with

16  Defendant, and because case law suggests that none

17  exists as to each of Plaintiff's claims, the second

18  exception to § 187 does not apply.   See Nedlloyd, 3

19  Cal. 4th at 748.   Therefore, the Court finds that New

20  York law governs Plaintiff's claims against Defendant.

21      2.   Plaintiff's Claim for Promissory Estoppel

22      To state a claim for promissory estoppel under New

23  York law, a plaintiff must allege facts establishing:

24  (1) a promise that is sufficiently clear and

25  unambiguous, (2) reasonable reliance on the promise by

26  a party, and (3) injury caused by the reliance.

27  Soldiers', 911 N.Y.S. 2d at 783.

28

A claim for promissory estoppel fails where it is contradicted by the agreement in issue which expressly states that neither party has any legal obligation to the other until both have executed and delivered an agreement.  See Frutico S.A. de C.V. v. Bankers Trust Co., 833 F. Supp. 288, 299 (S.D.N.Y. 1993); Prestige Foods, Inc. v. Whale Securities Co., L.P., 663 N.Y.S.2d 14, 15 (1997).  Here, Plaintiff's Complaint states that Defendant made promises that (1) Defendant would create ProjectCo with Plaintiff for the development of the Blue Diamond Solar Project and (2) Defendant would do so according to an established timeline, thereby permitting Plaintiff to secure a PPA for the Blue Diamond Solar Project.  Compl. ¶ 50.  However, given the language of the LOI, such promises are not sufficiently clear and unambiguous.  Like Frutico S.A., in which the court held that no clear and unambiguous promise was made where negotiations made it clear that any promise or agreement was conditioned upon execution and delivery of a written contract, here, the LOI makes it clear that the LOI: (1) was provided for discussion purposes only, (2) was not a commitment to transact on the part of either party, and (3) that any such commitment would be based upon corporate approval, satisfactory due diligence, satisfactory documentation, and satisfaction of relevant conditions precedent by both Parties.  Id.  Furthermore, the LOI states that "further agreement by the Parties on material terms

1  will be required for this transaction to proceed."

2  RJN, Ex. A., p. 1.   Based on the clear language of the

3  LOI expressly stating that neither party had any legal

4  obligation to the other pending further agreement,

5  documentation, and corporate approval, the Court **GRANTS**

6  Defendant's Motion to Dismiss Plaintiff's claim for

7  promissory estoppel.

8      Turning to Plaintiff's request for leave to amend,

9  Plaintiff maintains that it has omitted the detail of

10  numerous discussions, communications, meetings, emails

11  and the like which comprise the subject matter of this

12  Case.  Opp'n 18:10-13.  Although liberally granted,

13  leave to amend is not automatic and should be denied

14  where "the allegation of other facts consistent with

15  the challenged pleading could not possibly cure the

16  deficiency."  See Schreiber Distrib. Co. v. Serv-Well

17  Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

18  Here, the basis of Plaintiff's promissory estoppel

19  claim rests with the LOI, which Plaintiff argues

20  memorialized a promise that Defendant would create

21  ProjectCo with Plaintiff for the development of the

22  Blue Diamond Solar Project according to an established

23  timeline, thereby permitting Plaintiff to secure a PPA

24  for the Blue Diamond Solar Project.  However,

25  regardless of any communication Plaintiff ultimately

26  alleges occurred, the clear language of the LOI

27  disclaiming any promise to contract belies any

28  reasonable reliance on those communications.

1   Accordingly, because it is impossible for Plaintiff to
2   provide evidence of communications or discussions
3   showing a clear and unambiguous promise to contract,
4   Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's
5   claim without leave to amend.

6      3.   Plaintiff's Claim for Breach of the Implied
7           Covenant of Good Faith and Fair Dealing

8      Under New York law, all contracts imply a covenant
9   of good faith and fair dealing in the course of
10  performance.  M/A-Com Sec. Corp. v. Galesi, 904 F.2d
11  134, 136 (2d Cir. 1990); 511 West 232nd Owners Corp. v.
12  Jennifer Realty Co., 746 N.Y.S. 2d 131, 135 (2002).
13  Under the implied covenant, "neither party to a
14  contract shall do anything which has the effect of
15  destroying or injuring the right of the other party to
16  receive the fruits of the contract."  Thyroff v.
17  Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir.
18  2006).  The covenant "only applies where an implied
19  promise is so interwoven into the contract as to be
20  necessary for effectuation of the purposes of the
21  contract."  Id.  The implied covenant "does not extend
22  so far as to undermine a party's general right to act
23  on its own interests in a way that may incidentally
24  lessen the other party's anticipated fruits from the
25  contract."  Thyroff, 460 F.3d at 408 (quoting Galesi,
26  904 F.2d at 136).  Moreover, the implied covenant may
27  "only impose an obligation consistent with other
28  mutually agreed upon terms in the contract.  It does

16

1   not add to the contract a substantive provision not
2   included by the parties." Broder v. Cablevision Sys.
3   Corp., 418 F.3d 187, 198–99 (2d Cir. 2005) (internal
4   quotation marks and citations omitted).

5        Here, the action taken by Defendant that
6   purportedly violated the implied covenant of good faith
7   and fair dealing was terminating the LOI before the
8   exclusivity period was over.  Compl. ¶ 63; Mot. 12:23-
9   24.  However, the LOI specifically indicated that it
10  contained a summary of terms and conditions, which were
11  provided for discussion purposes only.  RJN, Ex. A.
12  Furthermore, the LOI indicated that it was not a
13  commitment to transact on the part of either Plaintiff
14  or Defendant, and that any such commitment would be
15  based upon satisfaction of further conditions, i.e.
16  corporate approval and documentation.  Id.  Because an
17  implied covenant can only impose an obligation
18  consistent with other mutually agreed terms of the
19  contract, an implied covenant not to terminate the LOI
20  before the exclusivity period could **not** be consistent
21  with the LOI given express language indicating that the
22  LOI was not a commitment to transact.  Broder, 418 F.3d
23  at 198-99.  Accordingly, because Plaintiff has failed
24  to provide sufficient facts to support a claim for
25  breach of implied covenant of good faith and fair
26  dealing, the Court **GRANTS** Defendant's Motion to Dismiss
27  Plaintiff's claim for breach of the implied duty of
28  good faith and fair dealing.

1    Moreover, as to Plaintiff's request for leave to
2 amend, the Court finds that the allegation of other
3 facts consistent with the challenged pleading can not
4 possibly cure the deficiency. <u>Schreiber</u>, 806 F.2d at
5 1401.  As discussed above, an implied covenant can only
6 impose an obligation consistent with other mutually
7 agreed terms of the contract.  Further, an implied
8 covenant not to terminate the LOI before the
9 exclusivity period could ***not*** be consistent with the LOI
10 given express language indicating that the LOI was not
11 a commitment to transact.  In order words, there are no
12 possible facts that Plaintiff can allege showing that
13 Defendant breached its implied duty of good faith by
14 terminating the agreement prior to the expiration of
15 the exclusivity period, because such an duty is
16 inconsistent with the language in the LOI indicating
17 that there was no binding commitment to transact.
18 Thus, it is impossible for Plaintiff to allege any
19 facts showing that the implied covenant applies in this
20 situation.  Accordingly, because Plaintiff cannot
21 provide the Court with facts to cure the deficiency,
22 the Court **GRANTS** Defendant's Motion to Dismiss
23 Plaintiff's claim for breach of the implied duty of
24 good faith and fair dealing without leave to amend.
25    4.  <u>Plaintiff's Claim for Negligent</u>
26       <u>Misrepresentation</u>
27    There is a split among the district courts within
28 the Ninth Circuit as to whether Rule 9(b) applies to

18

claims for negligent misrepresentation.  <u>Compare</u>
<u>Petersen v. Allstate Indem. Co.</u>, 281 F.R.D. 413, 416
(C.D. Cal. 2012), <u>with</u> <u>Glen Holly</u>, F. Supp. 2d at 1097-
98 <u>and</u> <u>U.S. Concord</u>, 757 F. Supp. 1053.  The court in
<u>Peterson</u> noted that among the cases that have applied
Rule 9(b) to negligent misrepresentation claims, those
cases cited no authority to support that application.
Furthermore, the court in <u>Petersen</u> cited to the express
language of Rule 9(b), which expressly limits its
application to fraud or mistake.  <u>Id.</u> at 417.  In <u>In re</u>
<u>Dau Systems, Inc.</u>, the court noted that a plaintiff's
1933 Securities Act Section 11 claim may be subject to
Rule 9(b)'s particularity mandate if his complaint
"sounds in fraud," that is, if the plaintiff alleges a
unified course of fraudulent conduct and relies
entirely on that course of conduct as the basis of a
claim.  411 F.3d 1006, 1027 (9th Cir. 2005).  However,
the Ninth Circuit in <u>Dau Systems</u> held that in a case
where fraud is not an essential element of a claim,
only allegations of fraudulent conduct must satisfy
Rule 9(b).  <u>Id.</u>  <u>Dau Systems</u> further elaborated that
those fraud allegations would be stripped from the
claim, and allegations of innocent or negligent
misrepresentation would survive.  <u>Id.</u> at 1028, (citing
<u>Lone Star Ladies Inv. Club v. Schlotzky's Inc.</u>, 238
F.3d 363, 368 (5th Cir. 2001)).

      Here, Plaintiff does not allege facts that support
a unified course of fraudulent conduct.  Rather,

Plaintiff alleges facts showing that Defendant acted
negligently.  Specifically, Plaintiff alleges that
Defendant initially told Plaintiff that Plaintiff was
fulfilling the terms of the LOI in a satisfactory
manner and that progress on the development of the Blue
Diamond Solar Project would remain secure if Plaintiff
continued to negotiate in good faith with Defendant.
Plaintiff alleges that contrary to those
representations, Defendant later professed Plaintiff's
ability to perform at that time to be unsatisfactory.
Compl. ¶¶ 78-79.  Plaintiff does not allege that
Defendant engaged in fraudulent conduct or that
Defendant made an intentionally false statement;
rather, Plaintiff alleges that Defendant made such
statements without any reasonable ground for believing
the statements to be true.  Compl. ¶ 79.  Because fraud
is not an essential element of Plaintiff's claim and
Plaintiff's claim does not "sound in fraud," the Court
finds that Plaintiff's claim of negligent
misrepresentation should be analyzed under the more
liberal Rule 8 pleading standard.

    The party asserting a claim of negligent
misrepresentation under New York law must prove (1) the
existence of a special or privity-type relationship
imposing a duty on the defendant to impart correct
information to the plaintiff, (2) that the information
was incorrect, and (3) reasonable reliance on the
information.  <u>J.A.O. Acquisition Corp. v. Stavitsky</u>, 8

N.Y. 3d 144, 148 (2007).  Whether the nature of the
relationship between the parties is such that the
injured party's reliance on a negligent
misrepresentation is justified generally raises an
issue of fact.  <u>Kimmel v. Schaefer</u>, 89 N.Y. 2d 257
(1996).  A party can be imposed with liability for
negligent misrepresentation if that party possesses
unique or specialized expertise or is in a special
position of confidence and trust with the injured party
such that reliance on the negligent misrepresentation
is justified.  <u>Id.</u> at 263.

Here, Plaintiff alleges in its Complaint that
pursuant to the LOI, Plaintiff agreed to negotiate
exclusively with Defendant, to keep confidential the
business plans and terms of the LOI, and to terminate
any pending discussions regarding any alternative
proposal regarding ProjectCo.  Compl. ¶. 32.  Presuming
such allegations to be true, the Court can infer that
Defendant was in a special position of confidence and
trust with Plaintiff given that the LOI required
discussions to be kept in confidence.  Moreover,
Plaintiff has alleged that Defendant made misleading
statements to Plaintiff; i.e., that Plaintiff was
fulfilling the terms of the LOI in a manner which
Defendant considered satisfactory, and that progress on
the development of the Blue Diamond Solar Project would
remain secure if Plaintiff continued to negotiate in
good faith with Defendant.  Compl. ¶ 78.  Plaintiff has

alleged that Defendant later professed to have
considered Plaintiff's ability to perform at that time
to be unsatisfactory. Id. at ¶ 79. Assuming such
allegations to be true, Plaintiff has alleged
sufficient facts to support that Defendant made untrue
representations when it initially informed Plaintiff
that it was proceeding in a satisfactory manner.
Finally, Plaintiff has alleged sufficient facts to
support that it had reasonably believed it was
performing under the LOI to the satisfaction of
Defendant and was acting in justifiable reliance on
Defendant's representations by continuing to negotiate
under the LOI. Id. at ¶ 81. Because Plaintiff has
asserted sufficient facts to support a claim for
negligent misrepresentation, the Court **DENIES**
Defendant's Motion to Dismiss Plaintiff's claim for
negligent misrepresentation.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part
and DENIES in part** Defendant's Motion to Dismiss as
follows:

- The Court **GRANTS** Defendant's Motion to Dismiss
  Plaintiff's promissory estoppel claim without leave
  to amend.
- The Court **GRANTS** Defendant's Motion to Dismiss
  Plaintiff's breach of implied covenant of good
  faith and fair dealing claim without leave to
  amend.

1 • The Court **DENIES** Defendant's Motion to Dismiss

2 Plaintiff's negligent misrepresentation claim.

3 Additionally, the Court **GRANTS** Defendant's Request

4 for Judicial Notice.

5 **IT IS SO ORDERED.**

6

7 DATED: 9/25/2013

RONALD S.W. LEW

8 **HONORABLE RONALD S.W. LEW**
Senior, U.S. District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28